UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**OWNERS INSURANCE COMPANY,**
**An Ohio Corporation**,

Plaintiff,

v.

**Timothy P. Rosko,**

Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND

Plaintiff, Owners Insurance Company ("Owners"), by and through its attorneys, Giometti & Mereness, P.C., pursuant to the Declaratory Judgment Act, as codified, 28 U.S.C. § 2201, and F.R.C.P. 38, 39 and 57, hereby submits its Complaint for Declaratory Judgment and Jury Demand, stating as follows:

### THE PARTIES and GENERAL ALLEGATIONS

1.      Plaintiff, Owners, is an Ohio corporation, with its principal place of business located at 6101 Anacapri Blvd., Lansing, Michigan 48917. Owners is licensed and authorized to transact business and to issue insurance policies in the State of Colorado.

2.      Defendant, Timothy Rosko ("Mr. Rosko"), is a resident and citizen of the State of Colorado.

3.      Mr. Rosko is the owner and sole member of RT Automotive and Truck Repair,

LLC ("RT Auto"). *See* May 10, 2018 Examination Under Oath of Timothy Rosko ("Rosko's EUO"), a true and correct copy of which is attached hereto as **Exhibit 1**, at 5:21 – 6:16.

4.     RT Auto is a diesel truck repair company with an office and principal place of business located in Commerce City, Colorado. *See id.* at 5:22.

5.     Owners issued a commercial automobile policy, Policy No. 49-601-907-01 (the "Policy") to RT Auto with effective dates September 13, 2016 to September 13, 2017 with Uninsured Motorist ("UM") coverage of $1,000,000.00 per person/per incident. A true and accurate copy of the pertinent parts of the Policy is attached hereto as **Exhibit 2**.

6.     RT Auto insured a single vehicle under the Policy, a 1997 Dodge Ram 3500 with VIN: 1B7MF36D0VJ629092. *See* **Exhibit 1** at 14:5-24; *see also* **Exhibit 2**, RTTRUCK 00011.[1]

7.     This claim arises from an  accident (the "accident") involvingMr. Rosko, who reported on March 30, 2017 that he was injured in an off-site accident at a truck stop, where his left ankle and foot were allegedly run over by a tractor-trailer. **Exhibit 1**. at 22:10 – 23:8.

8.     To investigate the claim, Owners requested Mr. Rosko to attend an examination under oath (EUO), which occurred on May 10, 2018.  At Rosko's EUO, Mr. Rosko admitted the following:

a.   On March 30, 2017, Mr. Rosko drove his personal vehicle, a 2002 Chevrolet Suburban, from RT Auto's location, across the street to a truck stop to inspect a tractor-trailer rig of an unknown customer.[2] *Id.*

---

[1] This denotes a Bates number of RTTRUCK 00011for ease of reference.
[2] This "unknown customer" was never heard from again. No contact information was obtained for this individual, and all that is known is that he is a male of middle-eastern descent. *See* **Exhibit 1**, at 24:5-9.

b.  Mr. Rosko parked his 2002 Chevrolet Suburban behind and perpendicular to the tractor-trailer rig he was inspecting for the unknown customer. *Id.*

c.  Mr. Rosko exited his vehicle and inspected the rear wheels and suspension of the unknown customer's tractor-trailer rig as well as the tandem wheels.  *Id.* at 26:8-23.

d.  At the time of the accident, Mr. Rosko was inspecting the passenger side of the trailer. *Id.* In the moments leading up to the accident, there was another tractor-trailer rig parked parallel, side by side, and approximately 4 ½ to 5 feet away from the unknown customer's tractor-trailer. *Id.* at 28:11-25; 31:11-16.

e.  During the inspection of the unknown customer's front set of tractor-trailer wheels and back set of tractor-trailer wheels, Mr. Rosko allegedly extended his left leg beneath the wheels of the neighboring tractor-trailer, which subsequently drove forward and ran over Mr. Rosko's left foot. *Id.* at 28:11 – 29:3; 31:4-10.

9.      The driver of the vehicle that allegedly ran over Mr. Rosko's left foot departed from the truck stop and also remains unidentified. Law enforcement officers who completed the investigation of this incident classified it as a hit and run and completed an accident report. A true and accurate copy of this report is attached as **Exhibit 3**.

10.     Mr. Rosko now seeks UM and Medical Payments benefits under the Policy based on his alleged injuries purportedly arising out of the accident.  Mr. Rosko claims a total of at least $161,106.41 for economic damages.  *See* Statement of Alleged Medical Bills Incurred from March 30, 2017 through February 5, 2018, a true and correct copy of which is attached hereto as **Exhibit 4** (totaling approximately $61,106.41); *see also* **Exhibit 1**, at 46:1-6 (Mr. Rosko

testifying that his alleged lost wages total more than $100,000.00).    On June 7, 2018, Mr. Rosko, through his counsel, submitted a demand for payment of the $1,000,000 UM coverage limit under the Policy.  Owners, through its counsel, rejected this demand on June 15, 2018.

## JURISDICTION AND VENUE

11.    Based upon the language of the Policy and the sequence of events described above, an actual controversy has arisen between Owners and Mr. Rosko as to their respective rights and obligations under the Policy with respect to the claims arising out of the accident.

12.    The amount in controversy between Owners and Mr. Rosko exceeds seventy-five thousand dollars ($75,000) because  Mr. Rosko alleges damages stemming from this accident of at least $161,106.41.

13.    This Court has jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy in this matter exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. This Court also has jurisdiction under 28 U.S.C. §§ 2201(a) and 2202 because Owners seeks declaratory relief concerning an actual controversy within this Court's jurisdiction.

14.    Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Mr. Rosko resides in Colorado, and the events and circumstances giving rise to Mr. Rosko's claim for benefits under the Policy occurred in this District. Venue in this District is also appropriate because this action addresses an insurance dispute involving a contract negotiated and issued in Colorado regarding alleged injuries that occurred in Colorado.

<u>**APPLICABLE POLICY PROVISIONS**</u>

15.    The **INSURING AGREEMENT** in the Policy contains the following pertinent

provisions:

**SECTION I – DEFINITIONS**

To understand this policy, **you** must understand the meaning of the following words.  These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy. . . .

**12.**    **You** or **your** means the first named **insured** shown in the Declarations and if an individual, **your** spouse who resides in the same household.

**13.**    **Your automobile** means the **automobile** described in the Declarations. . . .

**SECTION II – LIABILITY COVERAGE**

**1.**    **COVERAGE**

    **a.**    **Liability Coverage – Bodily Injury and Property Damage**

        **We** will pay damages for **bodily injury** and **property damage** for which **you** become legally responsible because of or arising out of the ownership, maintenance or use of **your automobile** (that is not a **trailer**) as an **automobile.  We** will pay such damages:

        **(1)**    on **your** behalf;
        **(2)**    on behalf of any **relative** using **your automobile** (that is not a **trailer**);
        **(3)**    on behalf of any person using **your automobile** (that is not a **trailer**) with **your** permission or that of a **relative**; and
        **(4)**    on behalf of any person or organization legally responsible for the use of **your automobile** (that is not a **trailer**) when used by **you**, a **relative**, or with **your** permission or that of a **relative**.

5

**We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy.  **We**  will do this at **our** expense, using attorneys of **our** choice.  This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability. . . .

**c.**      **Other Automobiles Covered**

The Liability Coverage provided for **your automobile** also applies to certain other **automobiles.**  It applies:

**(1)**      to an **automobile you** do not own which is temporarily used as a substitute for **your automobile**.  **Your automobile** must be out of use because of breakdown, repair, servicing, loss or destruction.  The owner of the substitute **automobile** is not covered.

**(2)**       to an **automobile** of the same type which **you** acquire after the inception date of the current policy term if:

**(a)**      it replaces **your automobile**.  **You** must report the replacement **automobile** to **us** no later than the expiration date of the policy term during which the **automobile** was acquired; or

**(b)**      it is an additional **automobile** and **we** insure all **automobiles you** already own provided **you:**

**1)**      report the additional **automobiles** to **us** within 30 days of delivery; and

**2)**      pay any required additional premiums.

This extension does not apply if **you** have other liability insurance that applies to the **automobile you** acquire. . . .

**SECTION IV – INDIVIDUAL NAMED INSURED**

If the first named **insured** in the Declarations is an individual and the **automobile** described in the Declarations is a **private passenger automobile** the following extensions of coverage apply.

1.     **LIABILITY COVERAGE – BODILY INJURY AND PROPERTY DAMAGE**

   a.     The Liability Coverage provided for **your automobile** (that is not a trailer) also appies to an **automobile** (that is not a **trailer**) not:

   (1)     owned by or furnished or available for regular use to **you** or anyone living with **you**.  However, **we** will cover **your** liability for **your** use of an **automobile** (that is not a **trailer**) owned by or furnished for the regular use of a **relative**. . . .

*See* **Exhibit 2**, RTTRUCK 00026.

16.     The **AUTOMOBILE MEDICAL PAYMENTS COVERAGE** endorsement contains the following pertinent provisions:

1.     **COVERAGE**

   a.     **We** will pay reasonable expenses for medical and funeral services to or for any person:

   (1)     who accidentally sustains **bodily injury**;
   (2)     while occupying or getting into or out of **your automobile**; and
   (3)     while **your automobile** is being used with **your** permission. . . .

2.     **OTHER AUTOMOBILES COVERED**

   The Automobile Medical Payments provided for **your automobile** also applies to certain other **automobiles**.  It applies:

7

**a.** to an **automobile you** do not own which is temporarily used as a substitute for **your automobile**. **Your automobile** must be out of use because of breakdown, repair, servicing, loss or destruction.

**b.** to an **automobile** of the same type which **you** acquire after the inception date of the current policy term . . . .

**5. INDIVIDUAL NAMED INSURED**

If the first named insured in the Declarations is an individual and the **automobile** described in the Declarations is a **private passenger automobile** to which Automobile Medical Payments applies, the following coverage extension applies:

**a.** Automobile Medical Payments applies to **you**:

**(1)** while occupying;
**(2)** while getting into our out of; or
**(3)** if struck by;

an **automobile** not owned by or furnished or available for regular use to **you** or anyone living with **you**.

**b.** The coverage extended in 5.a. is also afforded to a **relative** who does not own an automobile. . . .

*See* **Exhibit 2**, RTTRUCK 00030.

17. The **UNINSURED MOTORIST COVERAGE** endorsement contains the following pertinent provisions:

**1. DEFINITIONS**

The following definitions apply to this coverage in addition to those contained in **SECTION I – DEFINITIONS** of the policy. . . .

**b.** **Uninsured automobile** means an **automobile**: . . .

**(4)** that is a hit and run **automobile**.  A hit and run **automobile** is one:

    **(a)** which causes **bodily injury** whether or not physical contact is made with the injured person or the **automobile** the injured person is **occupying**; and

    **(b)** whose owner or operator is unknown.

An **occurrence** involving a hit and run **automobile** must be reported to the police within 24 hours of when it takes place.

## 2.   COVERAGE

**a.** **We** will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an **uninsured automobile** because of **bodily injury** sustained by an injured person while **occupying** or using an **automobile** this is covered by **SECTION II – LIABILITY COVERAGE** of the policy.

**b.** If the first named insured in the Declarations is an individual, this coverage is extended as follows:

    **(1)** **We** will pay compensatory damages, including but not limited to loss of consortium, **you** are legally entitled to recover from the owner or operator of any **uninsured automobile** because of **bodily injury you** sustain:

        **(a)** when **you** are not **occupying** an **automobile**; or

        **(b)** when **occupying** an **automobile** which is not covered by **SECTION II – LIABILITY COVERAGE** of the policy.

    **(2)** The coverage extended in **2.b.(1)** above is also afforded to a **relative** who does not own an **automobile**.

*See* **Exhibit 2**, RTTRUCK 00036-37.

**CLAIM FOR RELIEF**

*(Declaratory Judgment that the Policy does not provide coverage
for Mr. Rosko's claims arising out of the accident and the Mr. Rosko is not entitled to UM
benefits or Medical Payments benefits.)*

18.     Owners hereby incorporates by reference the averments of paragraphs 1 through 17 above as though fully set forth herein.

19.     The Policy extends coverage to qualifying automobiles and to persons occupying a covered automobile. Under Section I - Definitions of the Policy, definition 13 specifies: "Your automobile means the automobile described in the Declarations." *See* **Exhibit 2**, RTTRUCK 00017.

20.     The only automobile listed on the declarations page of the Policy is a 1997 Dodge Ram 3500; thus, the only vehicle that qualifies under the definition of "your automobile" in the subject Policy is the 1997 Dodge Ram 3500. *See* **Exhibit 2**, RTTRUCK 00011.

21.     The Policy does provide certain extensions of coverage for other automobiles, specifically: (1) automobiles replacing listed automobiles in the declarations page under certain circumstances; (2) vehicles acquired by the insured during the Policy period under certain circumstances; as well as (3), other extensions for an individual named insured under certain circumstances. However, none of these extensions apply in this case.

22.     Within **SECTION II – LIABILITY COVERAGE**, **c. Other Automobiles Covered**, **Exhibit 2**, RTTRUCK 00018, the coverage extensions for automobiles not listed on the declaration page of the policy are discussed; they are the extensions for a replacement automobile and for a newly acquired automobile. Neither of these extensions is applicable to Mr. Rosko for the reasons set forth below.

10

23.     As explained by Mr. Rosko in his EUO, the 1997 Dodge Ram 3500 listed on the declarations page was the only vehicle owned by RT Auto at the time of this accident. *See* **Exhibit 1**, at 14:5-24; *see also* **Exhibit 2**, RTTRUCK 00011. Mr. Rosko's statement makes clear that the 2002 Chevrolet Suburban that he drove at the time of the accident, and personally owned by him, was not a newly acquired vehicle of RT Auto at the time of the accident. Therefore, the Policy provision allowing the extension for newly acquired vehicles, clearly and unambiguously does not apply here, since Mr. Rosko was not occupying a newly acquired auto at the time of the accident. *See* **Exhibit 2**, RTTRUCK 00018 & 48.

24.     As it pertains to the replacement vehicle extension of the "**c. Other Automobiles Covered**" provision, coverage under this language does not apply as the 1997 Dodge Ram 3500 automobile was not out of use "because of breakdown, repair, servicing, loss or destruction." *See* **Exhibit 2**, RTTRUCK 00018. Moreover, for a replacement vehicle to qualify, it must be a vehicle "of the same type." *Id.* The 2002 Chevrolet Suburban is a Sport Utility Vehicle (SUV); the 1997 Dodge Ram 3500 is a large pickup truck and thus a different type of vehicle. Thus, Mr. Rosko was not occupying a replacement vehicle at the time of the accident. Lastly, the Policy clearly states that "[t]he owner of the substitute automobile is not covered." *Id.* Mr. Rosko admitted the 2002 Chevrolet Suburban is his personal automobile insured under his personal State Farm Insurance automobile policy. *See* **Exhibit 1**, at 15:5-9; 16:1-2. Here, even if there were facts that supported that the 2002 Chevrolet Suburban was a replacement vehicle, the policy is clear that the owner, Mr. Rosko, is not covered under the Policy. **Exhibit 2**, RTTRUCK 00018. Consequently, the replacement automobile extension does not apply.

25.     While the UM endorsement extends coverage in certain circumstances to the first

11

named insured, if an individual, when not occupying a covered automobile, here, this provision does not apply to Mr. Rosko because RT Auto is the only named insured on the Policy. *See* **Exhibit 2**, RTTRUCK 00056. The Policy language from Form 79429 states that Uninsured Motorist coverage will apply to any person legally entitled to recover from the owner or operator of an uninsured automobile because of bodily injury sustained by an injured person while occupying a covered automobile under **SECTION II – LIABILITY COVERAGE** of the Policy. *Id.* Further, it will extend to the first named insured if it is an individual and if the individual is injured by the operator of an uninsured automobile when not occupying an automobile. *Id.* Here, the Policy clearly and unambiguously names RT Auto as the named insured; therefore, Mr. Rosko, is not afforded coverage under policy provisions directed to the first named insured.

26.     The Medical Payments coverage endorsement similarly extends coverage in the event the first named insured is an individual; accordingly, Medical Payments coverage does not apply to Mr. Rosko for the same reasons as discussed above (*i.e.* RT Auto is the named insured). Moreover, the Policy only provides for Medical Payments coverage for any person who sustains bodily injury while *occupying* a covered automobile listed on the declarations page of the Policy. *See* **Exhibit 2**, RTTRUCK, 00059-60. This provision does not apply to Mr. Rosko because he was not occupying an automobile covered under the Policy.

27.     Colorado state courts have strictly interpreted the term "named insured" in insurance policies due to the particular importance this term has in interpreting the overall policy. *See D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.*, 39 P.3d 1205, 1207 (Colo.App. 2001). This Policy differentiates between coverage provided for situations in which the first

named insured listed in the declarations is an individual and in situations in which the first named insured is a business entity. See **Exhibit 2**, RTTRUCK 00017, 26 & 30.

28.     Here, the only named insured in the declarations is RT Auto; thus the coverage extensions for situations in which the first named insured is an individual do not apply in this case. In the absence of any ambiguity, the Court must give effect to the plain meaning of the policy terms. *See Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58 (Colo.1990).

29.     In sum, no coverage exists under paragraph **2.a** of the UM endorsement of the Policy for Mr. Rosko for injuries and damages arising from the accident because Mr. Rosko was not occupying an auto that was covered by **SECTION II – LIABILITY COVERAGE** of the Policy.  Nor does UM coverage exist for Mr. Rosko under paragraph **2.b.** because Mr. Rosko was not the first named insured in the Declarations.   Likewise, the Medical Payments endorsement does not apply to Mr. Rosko because he was not occupying a covered automobile under the Policy and because he was not the  first named insured on the Policy at the time of the accident.

30.     Finally, even if UM coverage did exist under the Policy, which it does not, it is questionable whether Mr. Rosko would be entitled to recover any UM benefits because, based upon his testimony at the EUO, it does not appear that Mr. Rosko's injuries and damages were caused by the negligence of the owner or operator of an uninsured automobile, but rather were caused by Mr. Rosko's own action in extending his left foot/ankle in front of the wheels of the adjacent tractor-trailer.

31.     Moreover, even if UM coverage under the Policy did exist under this circumstance, which it does not, it would only apply as excess coverage and would only apply to

the extent Mr. Rosko's covered damages exceed the amount already paid by State Farm Mutual Automobile Insurance Company, Mr. Rosko's primary UM insurer.

WHEREFORE, Plaintiff, Owners Insurance Company, respectfully requests that the Court enter judgment in its favor and against Defendant Timothy Rosko: (1) declaring that no coverage exists under the Policy with respect to claims arising out of the accident, and that Mr. Rosko is not entitled to recover either UM benefits or Medical Payments benefits under the Policy; (2) awarding Owners its costs and attorney fees incurred herein, pursuant to law; and (3) granting Owners such other and further relief as the Court deems just and proper under the circumstances.

**OWNERS REQUESTS A TRIAL TO A JURY ON ALL ISSUES.**

Respectfully submitted this 7th day of August, 2018.

**GIOMETTI & MERENESS, P.C.**

*Original Signature on File*
*s/ Gregory R. Giometti*
Gregory R. Giometti
Sean T. Conrecode
Giometti & Mereness, P.C.
50 S. Steele Street, Suite 480
Denver, CO 80209
Ph: (303) 333-1957
Fax: (303) 377-3460
E-mail: ggiometti@giomettilaw.com
E-mail: sconrecode@giomettilaw.com

14